REILLY *et al.* v. PHILLIPS *et al.*

1. In this state a power of sale in a real estate mortgage is a power coupled with an interest, and is not terminated by the death of the mortgagor.

2. One effect of a regular sale under such power, all of the prerequisite conditions named in the mortgage and the statute existing, is to foreclose the equity of redemption of the mortgagor and his successors in interest in the premises so sold, subject to their right to redeem within a definite time after sale, as affirmatively provided in the statute. See Comp. Laws, § 5421.

3. The heirs of the mortgagor are successors in interest, and the legislature having made no exception in favor of minor heirs, giving them other or further rights, the courts can make none.

(Syllabus by the court.  Opinion filed Jan. 31, 1894.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action to determine adverse claims to real property. There was judgment for defendants and plaintiffs appeal. Affirmed.

The facts are stated in the opinion.

*Joe Kirby,* for appellants.

A real estate mortgage containing a power of sale cannot be foreclosed under that power by advertisement after the death of the mortgagor. A power of sale contained in a real estate mortgage in this state is not a power coupled with an interest. Hunt v. Rousmanier, 8 Wheat. 204; Johnson v. Johnson, 3 S. E. Rep. 606; Wilkins v. McGehee, 13 S. E. Rep. 84; Lockett v. Hill, 1 Wood 552; Ferguson v. Kimball, 3 Barb. Chan. 615, Jones on Mort. 4 Ed. § 1794.

Where on the death of the mortgagor the fee passes to his heirs, their right of redemption cannot be cut off and barred by a sale made after the death of the mortgagor under the power contained in the mortgage, they having no guardians or represented in any manner.

*Stoddard & Wilson* and *Arthur C. Phillips,* for respondents.

In this state a power of sale in a real estate mortgage is a power coupled with an interest and is not terminated by the death of the mortgagor. Devlin on Deeds, §§ 382, 383, 384, 385 and 386. Vol. 1; Davis v. Lane, 10 N. H. 156; Berry v. Skinner, 30 Md. 567; Hunt v. Rousmaniers, 8 Wheat. 204; Beigin v. Bennett, 1 Cain's Cases, 1; Varnum v. Musroe, 8 Allen, 50; Frick v. Roe, 70 Cal. 296; Encking v. Simmons, 28 Wis. 273.

KELLAM, J.    The object of this action is to determine the rights, respectively, of the appellants, who were plaintiffs below, and the respondents, who were defendants, in and to certain premises in the city of Sioux Falls. The facts are undisputed and are these: Margaret Reilly, in her lifetime, was the

owner of the premises, and executed a mortgage thereon to Andrew C. Phillips, which was duly recorded. The mortgage contained the following power of sale: "And in case default shall be made in the payment of said sum of money, or any part thereof, at the time or times above specified for the payment thereof, or in case of the nonpayment of any taxes as aforesaid, or the breach of any covenant or any agreement therein contained, then, and in either case, the whole principal and interest of said note shall, at the option of the holder thereof, immediately become due and payable, and it shall be lawful in such case, for the said party of the second part, (Andrew C. Phillips) his heirs, executors, and administrators or assigns, to grant, bargain, sell, release and convey said premises, with the appurtenances thereto belonging, at public auction, in the manner now, or that may hereafter be, provided by law, and in the name of the grantors, and as their attorney for that purpose hereby duly authorized, constituted and appointed, to make, execute and deliver to the purchaser or purchasers, his, her or their heirs and assigns, forever, a good, ample, and sufficient deed of conveyance in the law." Margaret Reilly, the mortgagor, died. After her death, the mortgage being due and unpaid, Andrew C. Phillips, mortgagee, began and concluded proceedings for the foreclosure of said mortgage by advertisement as provided by statute, under the power of sale in the mortgage. The proceedings and sale were conducted and made by the sheriff of the county; the said Phillips becoming the purchaser, and receiving a certificate of sale, and, after the expiration of the statutory time for redemption, a sheriff's deed, in the usual form. No action or proceedings at law were instituted to recover the debt secured by the mortgage. The plaintiffs, except Thomas H., were the minor heirs of Margaret Reilly, and he was her surviving husband. No guardian was appointed for such minor heirs, and no notice of such foreclosure proceedings given them, other than by the publication of the notice of the mortgage sale. After the delivery of the

sheriff's deed to the mortgagee and purchaser, Phillips, the plaintiffs tendered to him the amount due upon the mortgage, which he refused.  Subsequently Andrew C. Phillips died, and defendants are his widow and heirs.  This brief statement of the facts is sufficient for an understanding of the questions involved, no attack being made upon the regularity of the proceedings.  The trial court confirmed the title in the defendants and from such judgment plaintiffs appeal.

Two questions cover the discussion of counsel: (1) Did the power of sale in the mortgage terminate at the death of Margaret Reilly, the mortgagor?  And (2) if not, did the foreclosure by advertisement and sale cut off the right of the heirs to redeem?

Whether the power of sale, and the right to execute it, survived the mortgagor who granted it, depends upon its nature. Was it a naked power, or, as is often expressed, a power coupled with an interest?  Counsel on both sides have presented instructive briefs, showing by cited adjudications the views of eminent courts and judges upon the question, which it would seem are not altogether harmonious; but we are inclined to think that the code of our own state furnishes a complete and decisive answer to the question.  The power of sale in a mortgage is not treated in our statute as a simple power of attorney, but is declared to be a trust, (Section 4354, Comp. Laws,) and as such is an elemental part of the security, (Section 2829;) and in Section 2813 a distinction between such a power, which is a trust, and a simple power of attorney to convey land, is expressly declared.  The power of sale was not, then, a naked, independent power, whose life and effect are to be determined under the principles and rules of agency, but was a substantial part of the security itself.  It was as much a part of the right conveyed to the mortgagee as was the lien upon the mortgaged premises.  It was a right which Reilly sold to Phillips when he made the mortgage, and for which Phillips paid when he paid for the mortgage.  It lasted as long

as the security lasted, or until the mortgagee had taken other means to enforce it. It was a power coupled with an interest, and such a power does not terminate with the death of the party conferring it. Comp. Laws, § 4007. That the power of sale in a mortgage survives, and may be executed after the death of the mortgagor, is at least suggested by Section 5424 Comp.` Laws, where it is provided that the surplus must be paid to "the mortgagor, his legal representative or assigns." While the term "legal representatives" does not exclusixely mean executors or administrators, it ordinarily does. 13 Amer. & Eng. Enc. Law, p. 221. As before noticed our statute expressly provides that a mortgage may contain a power of sale; that it becomes a part of the security; and how it may be enforced. The mortgage in question was made with reference to these provisions, and they became a part of it. Section 5411, Comp. Laws provides that: "Every mortgage of real property containing therein a power of sale, upon default being made in the condition of such mortgage, may be foreclosed by advertisement," etc. No exception or suspension of the right to thus foreclose is made or declared on account of the death or other disability of the mortgagor.

The appellants contend that the concluding words of the power of sale in this mortgage show that it was the intention of the mortgagor that the deed, in case of sale under such provision, should be made in her name and as her act, through and by the mortgagee as her attorney, and that such a power could not be legally executed after her death. The words are: "And in the name of the grantors and as their attorney for that purpose hereby duly authorized, constituted and appointed, to make, execute and deliver to the purchaser or purchasers, his, her or their heirs or assigns, a good, ample and sufficient deed of conveyance, in the law." While we recognize much force in this argument, the fact still remains that by the power of sale she had already authorized the mortgagee to sell the premises, in case of default, "at public auction in the manner now, or that

may hereafter be, provided by law." She knew when she granted the power—for she was charged with knowing the law —that the statute definitely provided the means and method of its execution, and she will be presumed to have contracted with reference to it. In such case the statute becomes a part of the contract. State v. Fylpaa, (S. D.) 54 N. W. 599; State v. Foley, 30 Minn. 350, 15 N. W. 375. It may be the words first quoted were intended by the parties to afford an additional or cumulative method of executing the power, but we do not think they should be construed to cut off the statutory method. If we are correct as to the theory and effect of the several statutory provisions above referred to, we need not look further for the law which must control us. We think, however, that, independent of these particular provisions, our conclusion upon this question is sustained by general principles of law, and by the preponderance of adjudicated cases. 2 Perry, Trusts, § 602, says: "It is a universal rule that a power coupled with an interest is irrevocable; and as a power of sale inserted in a mortgage * * * is a power coupled with an interest, it cannot be revoked by any act of the donor or grantor of the power. Not even the death or insanity of the grantor or donor will annul the power, or suspend its exercise. The debt remains, the right or lien on the property remains, and the power is coupled with them." See, also, 4 Kent, Comm. 147. That the power of sale in a mortgage is not terminated or suspended by the death of the mortgagor, is directly held in Connors v. Holland, 113 Mass. 50; Varnum v. Meserve, 8 Allan 158; Hudgins v. Morrow, 47 Ark. 515; 2 S. W. 104; Beattie v. Butler 21 Mo. 313; Jones v. Tainter, 15 Minn. 512, (Gil. 423.) Upon the same principle, and for the same reason, it is held that the subsequent insanity of the mortgagor does not terminate or suspend the power of sale granted before the disability occurred. Encking v. Simmons, 28 Wis. 272; Meyer v. Kenchler, 10 Mo. App. 371; VanMeter v. Darrah, (Mo. Sup.) 22 S. W. 30; Berry v. Skinner, 30 Md. 567.

Appellants insist that the rule of these cases is not applicable in this jurisdiction, because, under our law, the mortgagor retains the title to the estate mortgaged, contrary to the law prevailing in most of the states whence these decisions come; but we apprehend that, upon principle, that fact ought not to make any difference in respect to the survival of the power. Even in the states where the mortgage is held to convey the legal title to the morgagee, the transfer is only nominal. It is more of a fiction than a reality. If the mortgagee, who is said to hold the legal title, die, his interest does not pass to his heirs, as real estate, but to his executor or administrator, as personal property. It is a chose in action, precisely as in this state. Hil. Mort. 281. In New York the mortgage does not convey the legal title, and has not, since a very early day, and yet Chancellor Walworth, in Jencks v. Alexander, 11 Paige 624, says that a power of sale in such a mortgage is a beneficial power; that it is a power coupled with an interest, "to the extent of the interest of the mortgagee in the premises." In Wilson v. Trout, 2 Cow. 236, the court says: "The power of the mortgagee to sell the mortgaged premises is undoubtedly a power coupled with an interest." The power of sale in that state is constantly treated as a power coupled with an interest, and the cases are frequent in which it has been executed after the death of the mortgagor. See Anderson v. Austin, 34 Barb. 319; King v. Duntz, 11 Barb. 191; George v. Arthur, 2 Hun. 406; Cole v. Moffitt, 20 Barb. 18. The amendment of 1844, of the law regulating sales under such power, expressly recognizes its survival, by requiring that, in case of the death of the mortgagor, notice should be served upon his personal representatives. In Wisconsin the legal estate remains in the mortgagor, but in Encking v. Simmons, *supra,* it was held that the insanity of the mortgagor did not suspend the power. The quality of the power does not depend upon the general character or legal effect of the instrument in which it is granted, but upon whether or not the the power itself is coupled with an in-

terest in the subject concerning which the parties are contract-
ing.   It would be difficult to justify the conclusion that in one
case the mortgagee had  an  interest in the subject of the mort-
gage, and in the other case did not.   The purpose of the mort-
gage, and the rights of the parties as mortgagor and mortgagee
are the same in both cases.   Under either  theory  the  general
rights of the mortgagee are the same, with respect to the prop-
erty mortgaged.   He may insure it.   He may  redeem  it  from
tax sale.   He may  protect  it  from waste, even as against him
who holds the legal title.   We think, both under our statute or
without it, the power of sale is one so coupled with  an interest
that it it survives the death of the grantor.   The case of Hunt
v. Rousmanier, 8 Wheat. 174, strongly relied upon by appellants,
is distinguishable from this.   In that case there was  no  mort-
gage or pledge of the property, but a naked power of attorney,
authorizing Hunt to sell and transfer  it  in  the  name of Rous-
manier.   A bill  of  sale  was  to be given in the name of Rous-
manier, and as his ˙act, by his attorney.   Neither  possession,
nor any lien upon or interest in the property, was attempted to
be  conveyed.   In  speaking  of this case Chancellor Walworth
says, in Knapp v. Alvord, 10 Paige, 209, the decision would
probably have been different if the property had been delivered
to Hunt as a pledge, but under our law  mortgaged property is
pledged—hypothecated—without delivery.

   We are referred to cases not in harmony with the views we
have expressed.   The strongest one, perhaps, is Johnson v.
Johnson, (S. C.) 3 S. E. 606, where the court, after quite a
thorough discussion, holds that the power of sale was not
coupled with an interest, and consequently expired with the
mortgagor.   To make the case more applicable here, the
learned judge who writes the opinion predicates his argument
and conclusion largely upon the fact that there, as here,
the mortgage creates a lien only, and does not convey the
title.   Upon that point, and its effect upon the questions in
hand, we have already expressed our views.   In that state,

however, it would seem from the opinion—and such seems to be the fact, so far as we can ascertain—there is no statute recognizing, or declaring the effect of, or providing a method for the execution of, the power. It could be executed only as any other power of attorney, in the name of the principal. A sale, if made, would be in the name and as the act of the deceased principal. Such is not the case here. Our statute provides, and did when this power was created, that a power of sale in a mortgage may be executed by the sheriff of the county in which the mortgaged premises are situated; that the sale may be advertised and made by him, and the deed executed by him, as sheriff. It was so done in this case. As before observed, a power of sale, if such is contemplated in the statute, will be presumed to be created in view of the statute, and that it may be executed in the manner provided by such statute, and not necessarily in the · name of the grantor, and not as a simple power of attorney. The other cases cited by appellants are also from states having no statute like ours, so far as we are able to ascertain.

This brings us to the second question. Did the sale under such power, conducted, as is conceded, in strict pursuance of the statute, cut off the right of the heirs to redeem after the expiration of a year from the sale? We have already expressed the opinion—and such is, we think, the doctrine of the statute —that when Reilly made the mortgage to Phillips, she conveyed to him, not only the lien upon the land, but the right to enforce it under the power of sale. Such right became property in Phillips' hands, in the same sense that his lien was property As such, it would pass to his personal representatives at his death, as a part of his estate. Reilly had then left such rights in and to the mortgaged property as she had not conveyed to Phillips. She could leave no more to her heirs than she herself had at the time of her death. Their rights must be measured by hers. They took her place, and might only do, with respect to the property, what she might do. The rights of the heirs having accrued subsequent to the mortgage,

they are subordinate to it,—not only to the lien of the mort-
gage, but to the power of sale which it conveyed as a part of
the security.   On this ground it was held in Brackett v. Baum,
50 N. Y. 8, that a statutory foreclosure and sale in a purchase
money mortgage barred the dower right of the wife, who did
not sign the mortgage.   By the amendment of the New
York statute in 1844, it was required that, if the power of sale
be executed after the death of the mortgagor, notice of sale
should be given to the administrator or executor of the deceased
mortgagor; but in Anderson v Austin, *supra*, wherein the
heirs of the mortgagor sought to redeem, they having had no
notice of the sale, the court held that the mortgagee was only
required to pursue the procedure provided by the statute, and,
if no administrator or executor had beed appointed at the time
the sale was advertised and made, the provision as to service upon
them was inoperative, and, service upon the heirs not being re-
quired by the statute, the foreclosure was complete when made
in the mode otherwise prescribed by the statute.   Demarest v.
Wyncoop, 3 Johns. Ch. 129, was an action by heirs, who were
infants when the sale was made, to redeem premises sold under
a statutory foreclosure by virtue of a power of sale in the mort-
gage.   The foreclosure was prior to the amendment of 1844,
and when publication of notice of sale, only, was required. The
court denied the right of the heirs to redeem, saying:   "The
statute has no saving clause for persons laboring under disa-
bilities, but is peremptory that no sale under such power shall
be defeated, to the prejudice of any bona fide purchaser, in fa-
vor of any person claiming the equity of redemption. Where
the statute makes no exception, the court, as I have already
shown, can make none, on the ground of any inherent equity
applicable to infants."   And so Chancellor Kent, in discussing
the effect of an advertised sale, pursuant to the statute, under
a power of sale in the mortgage, says:   "A sale under a power,
as well as under a decree, will bind the infant heirs."   4 Kent,
Comm. 191.   By the statute of our state, no notice of sale is re-

quired to be served upon anybody. General notice to all interested is given by publication. There are no parties to the proceeding, as in an action for foreclosure; and yet the proceeding, where authorized by a power of sale in the mortgage, was, without question, intended to take the place of a foreclosure by action, and to have the effect of an old foreclosure in equity. The statute having made no provision for service of · notice of the sale either upon heirs or others interested in the mortgaged property, such service, if made, would be entirely voluntary on the part of the mortgagee, and could add nothing to the legal effect of the sale. This court cannot add to the statute another provision requiring that an express notice shall be given to minor heirs or their guardian in order to make the foreclosure sale effective against them. If, as the law stands, a foreclosure would be good with such actual notice, it is good without it. The statute expressly gives the right to redeem, within a year from sale, to the mortgagor, or his successors in interest. These must be redemption rights which it was intended to be affected by the foreclosure and sale; otherwise, there would be no occasion for so affirmatively preserving or conferring them. The heirs of a mortgagor, whether minor or adult, are his successors in interest, and included in the class which may so redeem. One of two conclusions seems inevitable: Either a strict pursuance of the statute was intended to, and does, bar the rights of heirs, whether minor or adult, to redeem, except as preserved for a definite time by the statute, or the statute, and the proceeding it authorizes, are entirely unavailable and ineffectual to foreclose the equity of redemption of any person at the time under disability. In our examination, we have found no case announcing or sustaining the latter conclusion, but find so many, some of which are cited above, holding the reverse, that we are constrained to adopt the first proposition as the law. Whether the statute itself is wisely considerate of all the interests that may be affected by such proceeding is a legislative, and not a judicial, question. It has not been ques-

tioned but that it was competent for the legislature to bring all the interests within the range of the proceeding by a general publication of the notice, and we think that is the theory and scheme of the statute. We think the judgment of the trial court is correct, and it is affirmed.