LUCY A. JEFFERSON, Appellant, *v.* LOREN B. BANGS et al., Respondents.

Mortgage — foreclosure by advertisement — sale not void because notice not served upon personal representatives of mortgagor, when mortgagor and executrix of his will are dead, and no successor appointed — purchase at foreclosure sale, by assignee of mortgage who was also life tenant of premises and guardian in socage of infant devisee entitled to premises on termination of life estate — when sale voidable by such devisee.

Testator devised the fee of his farm, subject to a mortgage, to his granddaughter, subject to its use by her father and mother during their lives; subsequently the father of such devisee acquired title to the mortgage and foreclosed it by advertisement; there being no personal representatives of the testator, the requirement as to service of notice of sale on such representative could not be complied with, nor was such notice served on plaintiff who was then thirteen years of age. Her father became the purchaser and one of these defendants took title by mesne conveyances with knowledge of the relation of the parties and of the provisions of the will of the testator. The plaintiff asks judgment that she be deemed to be the owner of the premises. *Held*, that as there was no personal representative upon whom notice could be served, the statutory provision as to notice could not be complied with, and the foreclosure was not void by reason of failure to serve such notice.

The fact that the assignee of the mortgage and purchaser of the premises was the guardian in socage of his daughter, the devisee of the fee, did not render the purchase by him absolutely void; but the mortgagee was also the life tenant, and as such bound to discharge the interest on the mortgage. While the purchase was not void, yet, by reason of the trust relation the assignee of the mortgage bore to the plaintiff, the sale was voidable at her election.

During the life of the tenant for life neither his possession nor that of his grantee can be adverse to that of the remainderman, hence the plaintiff was not bound to act during the lifetime of her father, who died less

than a year prior to her bringing the suit. The grantees, under the conveyance by the father and mother, entered into possession of the farm less than twenty years before the commencement of this action, and even if it be assumed that they then became mortgagees in possession, this action was brought before the Statute of Limitations ran against it. *Jefferson* v. *Bangs*, 124 App. Div. 916, reversed.

(Submitted October 14, 1909; decided December 7, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 15, 1908, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Randolph Horton* for appellant. The attempted statutory foreclosure of the mortgage in 1861 by Hastings A. King was null and void and he obtained no title whatsoever by reason and on account of such foreclosure. (*MacKenzie* v. *Alster*, 64 How. Pr. 388; *Anderson* v. *Austin*, 34 Barb. 319; *Van Vleck* v. *Enos*, 88 Hun, 348; *Mowry* v. *Sanborn*, 68 N. Y. 153; *Weir* v. *Birdsall*, 27 App. Div. 404; *Cohoes Co.* v. *Goss*, 13 Barb. 137; *Mowry* v. *Sanborn*, 65 N. Y. 581; *Bloom* v. *Burdick*, 1 Hill, 130; *Thatcher* v. *Powell*, 6 Wheat. 119; *Jackson* v. *Esty*, 7 Wend. 148.) At the time of the foreclosure of the mortgage in 1861, Hastings A. King was the guardian in socage of his infant daughter, the plaintiff herein, and could not foreclose the mortgage and purchase the premises in disregard of the duty he owed to his minor child. (*Stokes* v. *Hyde*, 14 App. Div. 530; *Matter of Lehman*, 2 App. Div. 531; *Sheridan* v. *House*, 4 Keyes, 569; *Hersee* v. *Simpson*, 154 N. Y. 496; *Corse* v. *Chapman*, 153 N. Y. 466; *Campbell* v. *Stokes*, 142 N. Y. 23; *Knolls* v. *Barnhart*, 71 N. Y. 474; *R. D. Church* v. *O'Brien*, 13 Misc. Rep. 729; *Emerson* v. *Spicer*, 46 N. Y. 594; *Boyer* v. *East*, 161 N. Y. 580.) The Statute of Limitations is not a bar to this action. (1 R. S. 739, §§ 143, 145; *Christie* v. *Gage*, 71 N. Y. 189; *Clute* v. *N. Y. C. & H. R. R. R. Co.*, 120 N. Y. 267; *Jack-*

*son* v. *Schoonmaker*, 4 Johns. 390 ; *Fleming* v. *Burnham*, 100 N. Y. 1 ; *Ruess* v. *Ewen*, 34 App. Div. 484 ; *Hitchcock* v. *Peaslee*, 89 Hun, 506 ; *Simis* v. *McElroy*, 160 N. Y. 156 ; *Grout* v. *Townsend*, 2 Hill, 554 ; *Clarke* v. *Hughes*, 13 Barb. 147.)

*Rowland L. Davis* for respondents. The plaintiff was guilty of laches, and waived all right to attack the title obtained by virtue of the foreclosure sale. (*Matter of Neilley*, 95 N. Y. 382 ; *Calhoun* v. *Millard*, 121 N. Y. 69 ; *McKechnie* v. *McKechnie*, 3 App. Div. 91 ; *Sprague* v. *Griffin*, 22 App. Div. 223 ; *McCarthy* v. *Titsworth*, 119 App. Div. 547 ; *Kemp* v. *Cook*, 18 Md. 130 ; *Phillips* v. *H. Nat. Bank*, 21 Wkly. Dig. 192.) The cause of action had become barred by the Statute of Limitations. (Code Civ. Pro. §§ 365, 369, 370, 375, 379 ; *Baker* v. *Oakwood*, 123 N. Y. 16 ; *Sands* v. *Hughes*, 53 N. Y. 287 ; *Campbell* v. *Ellwanger*, 81 Hun, 259 ; *McMichael* v. *Russell*, 68 App. Div. 104 ; *Shriver* v. *Shriver*, 68 N. Y. 575 ; *Messinger* v. *Foster*, 115 App. Div. 689 ; *Cole* v. *Lester*, 48 Misc. Rep. 13.) The failure to serve the personal representatives of the mortgagor was not a fatal defect in the foreclosure. (*Stanley* v. *Freckleton*, 65 Hun, 138 ; *Bond* v. *Bond*, 51 Hun, 507 ; *Pitt* v. *Amend*, 84 Hun, 492 ; *Anderson* v. *Austin*, 34 Barb. 319 ; *Low* v. *Purdy*, 2 Lans. 424.)

CULLEN, Ch. J. The action was brought to recover a farm of 76 acres in the town of Groton, Tompkins county. The facts out of which the controversy arises are as follows : In August, 1856, one William King was seized in fee of the farm in question subject to a purchase money mortgage for $1,510. By his will, which was afterward proved, the testator gave the use of one-third of his real estate to his wife Hannah King during life, and the use of two-thirds (and of the whole after the widow's death) to his adopted son Hastings A. King (the father of the plaintiff) for and during his life. By the 3rd clause he devised the fee simple of all his real estate to Lucy Ann King, daughter of Hastings King, and the present plain-

tiff, subject to the use thereof by her father and mother during their natural lives. It is further provided : "If the said Lucy Ann King should not arrive at full age and should not leave any lawful issue then in such case I give, devise and bequeath the fee simple of all my real estate to my sister, Hannah Freeman, and cousin by marriage, William Blodgett, to be equally divided between them." He appointed his wife, Hannah King, executrix of the will. In January, 1857, the purchase money mortgage on the farm was assigned to Hastings King. About the same time Hastings King demised his interest in the farm to his adopted mother, the executrix, Hannah King, during her life and by the same instrument covenanted to maintain said Hannah in a comfortable manner and for the faithful performance of that covenant assigned to her the said purchase money mortgage. Hannah King died in January, 1860. In January, 1861, Hastings King, the plaintiff's father, then in possession of the farm, foreclosed by advertisement the purchase money mortgage he had acquired. At this time the plaintiff was thirteen years old. Hastings King served no notice on the plaintiff, nor on any one, the executrix of his father's will being then dead, and no personal representatives of the testator having been appointed in her stead. On the sale in that foreclosure Hastings King became the purchaser and continued in possession of the farm. On February 3d, 1872, Hastings King and wife conveyed the farm to Rufus Hammond by warranty deed, but the grantors continued in possession of the farm until 1886 or 1887. In July, 1885, Hammond conveyed the premises to Frederick E. Bangs, a brother of the defendant. Said Bangs was a purchaser for value, but he knew at the time that the present plaintiff had a claim on the farm. On March 3d, 1901, Frederick E. Bangs conveyed the farm to Loren B. Bangs, also for value, but the trial court found as a fact that each of the defendants understood the relation of the parties and the provision of the will of William King, and held as matter of law that the defendants could not be treated as purchasers in good faith without notice. Angeline King, the mother of the plain-

tiff, died February 24th, 1901, and Hastings A. King, her father, February 21st, 1904. The action was commenced in January, 1905. The judgment prayed for in the complaint is, 1. That the deeds of conveyance from Hastings King to Rufus Hammond and from Hammond to Bangs be declared null and void except as to the life estate of Hastings King; 2. That a decree be granted adjudging and decreeing that the plaintiff is the owner of said lands and entitled to the possession thereof; 3. That the plaintiff have such other and further relief as is just and equitable.

The trial court decided that the foreclosure by advertisement was not void by reason of the failure to serve personal representatives of William King, because at the time of the foreclosure there were no personal representatives. It further held that as Hastings A. King was at the time of the foreclosure both the guardian in socage of the plaintiff and also tenant of the farm for life, his purchase, though not void, was voidable at the election of the plaintiff. But it found as a matter of fact: 17th. "That prior to 1872 and after the plaintiff was beyond the age when the guardianship terminated, she was informed in regard to the will and her rights thereunder and that there had been an illegal transaction in that her father had no right to do what he had done." On this finding of fact the court decided as a matter of law: 11th. "That while the sale to Hastings A. King was voidable at the election of the plaintiff, it was incumbent upon her to act with reasonable diligence." 12th. "That the right to avoid the sale has been lost by not acting within reasonable time after discovery of the facts, and she must be held to have waived all right to attack the title acquired by the foreclosure sale." 13th. "That the statute of limitations was set running in 1872 when she was informed of her rights under the will and what her father had done." 14th. "That under the circumstances disclosed in this case, the delay of 32 years in attacking the sale is a bar to relief against the defendants; and that this action is barred by the statute of limitations." As the judgment of the Special Term has been unanimously

affirmed, all that we can review is the question whether the facts as found justified the judgment rendered.

The first point raised by the appellant is that the statutory foreclosure was void because of the failure to serve the personal representatives of the deceased. In other words, it is contended that if there are no personal representatives of the deceased, no foreclosure by advertisement can be had. This question has never been decided by this court, but has been several times passed upon by the Supreme Court, and is the subject of conflicting decisions. At the time of the foreclosure such proceedings were regulated by the Revised Statutes (2 R. S. p. 546, sec. 3, subd. 3, as modified by L. 1844, ch. 346), which, in relation to serving notices, is as follows: " 3. By serving a copy of such notice, at least fourteen days prior to the time therein specified for the sale, upon the mortgagor or his personal representatives, and upon the subsequent grantees and mortgagees of the premises, whose conveyance and mortgage shall be upon record at the time of the first publication of the notice, and upon all persons having a lien by or under a judgment or decree upon the mortgaged premises, subsequent to said mortgage, personally or by leaving the same at their dwelling house," etc. Of course, under this statute if the mortgagor were living or if there were personal representatives in case of his decease, notice must be served on such parties or the foreclosure would be void. There is no requirement for serving notice on heirs or devisees of a deceased mortgagor. But the question arises what course is to be pursued when there are no such personal representatives. One view has been entertained that in such case it was impossible to foreclose a mortgage by advertisement till the mortgagee had succeeded in getting a personal representative appointed. The other view is that in such case it is not necessary to serve notice on any persons, but that a foreclosure may be effected by the advertisement and posting of the public notice required by the statute. In *Anderson* v. *Austin* (34 Barb. 319, 321) the General Term of the Supreme Court, second department, held, " where there is no personal

representative to be served with notice, that provision of the statute is inoperative, and the foreclosure will be good if conducted in the mode otherwise prescribed in the statute." In *Stanley* v. *Freckelton* (65 Hun, 138) the General Term of the same department again held the same doctrine. In *King* v. *Duntz* (11 Barb. 191) a Special Term case, the point was not directly involved, though Judge IRA HARRIS held that the heirs were not entitled to notice under the statute. In *Cole* v. *Moffitt* (20 Barb. 18, 20), though again the point was not decided because not actually in issue, the General Term of the third department said concerning lack of service of notice : " If the death of the mortgagor had been proved, the objection to the validity of the proceedings would have been removed, unless it had further appeared that he had personal representatives." In *Bond* v. *Bond* (51 Hun, 507, 510) the same General Term, by LANDON, J., held " that where there are no personal representatives of the deceased mortgagor, the foreclosure is, nevertheless, valid against those upon whom service is made." On the other hand, in *Mackenzie* v. *Alster* (64 How Pr. 388), GILBERT, J., at Special Term, held that where there were no personal representatives there could be no foreclosure by advertisement. In *Van Schaack* v. *Saunders* (32 Hun, 515) the same doctrine was held by the General Term of the third district, BOARDMAN, J., dissenting.. This decision, of course, is prior to the one of the same department already cited. I shall not enter into any discussion of the merits of the argument on the respective sides of the question. The weight of authority is in favor of the proposition that the foreclosure is not void for failure to serve personal representatives where there are none. On these authorities many titles have been passed, and it would not do to now overrule them, especially as since 1877 the question has been disposed of by the enactment at that time of the Code of Civil Procedure, which provides (§ 2388, subd. 4) : "A copy of the notice must be served, as prescribed in the next section, upon the mortgagor, or, if he is dead, upon his executor or administrator, if an executor or administrator *has been appointed,*

and also upon his heirs, providing he died the owner of the mortgaged premises."

We now come to the second question in the case, the effect which the relation the owner of the mortgage bore to the plaintiff had on the validity of the sale. The mortgagee was her guardian in socage, but this did not render the purchase by him absolutely void. (*Boyer* v. *East*, 161 N. Y. 580.) But the mortgagee was also the life tenant bound to discharge the interest on the mortgage. While the purchase was not void, it was, undoubtedly, by reason of the trust relation the mortgagee bore to the plaintiff, voidable at her election, and so the trial court held. Nevertheless, it defeated her election to avoid the sale on the theory that her rights had been cut off by the Statute of Limitations. This result was reached by the seventeenth finding of fact already referred to, that prior to 1872 and after she became of age and the guardianship had terminated the plaintiff was informed in regard to the will and her rights thereunder, and that there had been an illegal transaction in that her father had no right to do what he had done. The court decided that the plaintiff's cause of action arose at that time. If the plaintiff could have sustained in this suit her legal cause of action to recover possession of the property on the theory that the sale under foreclosure was absolutely void, being a remainderman, there can be no question that the statute would not commence to run against her until the termination of the life estate, which was less than a year prior to her bringing suit. (*Fleming* v. *Burnham*, 100 N. Y. 1.) But it is urged that as the purchase by her father was not void, but voidable, the plaintiff at any time after she had become of age and acquired knowledge of the transaction could have brought her action to avoid the sale, and reliance is placed on the decision of this court in *Murphy* v. *Whitney* (140 N. Y. 541). It is quite probable that under the authority cited the plaintiff might have maintained an action before the termination of the life estate, though the facts in that case and on which the right to maintain the action was placed by the court were peculiar.

The agreement under which the defendant there held the land was not of record, and the court said that there was danger that she might convey away the land to a *bona fide* purchaser in fraud of the plaintiff's rights. The same principle was held in *Earle* v. *Earle* (173 N. Y. 480). Assuming that the plaintiff might have maintained her action after she discovered the illegal act of her father, was she required to thus commence so as to avoid the bar of the Statute of Limitations? I can find no decision to that effect. It was said (not decided) in *Anderson* v. *Northrop* (30 Fla. 612) that "no laches can be imputed to reversioners in a contest between them and the tenant for life over the reversionary property until after the termination of the life estate, unless it be shown clearly and unequivocally that before that time they had actual knowledge of an abandonment by the life tenant of her status as such, and of a holding of the property by her under a different and adverse right. And that the onus of showing such notice or knowledge, as, when coupled with long acquiescence, would amount to laches, is on the party urging laches as a defense." In *Sedgwick*, v. *Taylor* (84 Va. 820) it was held that although the remaindermen could maintain an action the objection that their claim was stale was not well founded so long as the life tenant was living. And it is the rule that during the life of the tenant for life neither his possession nor that of his grantee can be adverse to that of the remainderman. (*Christie* v. *Gage*, 71 N. Y. 189.) Nor do I see what relief the plaintiff could have sought in any action brought while her father was in possession, except to have the sale avoided. She could not recover possession because, though she avoided the sale, her father was still entititled to retain possession by virtue of his life estate. Nor was she required to pay the mortgage and redeem the land from its burden, for the law is well settled that while the mortgagee's possession runs against those entitled to an estate in remainder and his continuance in possession for twenty years will bar the title of the remainderman, this rule does not apply "When the mortgagee has entered, not

as mortgagee only, but by virtue of having a limited interest in the equity of redemption, as, for instance, a life estate, * * * time will not run in his favor during the continuance of that interest, for it would be his duty to keep down the interest on his mortgage in favor of the remaindermen." (2 Jones on Mortgages, § 1156; 2 Story's Eq. Juris. § 1028.) The exception to the rule equally applies to the defendants in this case, for the conveyance from Hastings King operated not only to transfer the mortgage, but to grant his life estate.

If, however, it were to be assumed that the entry of the defendants into actual possession of the farm was in hostility to the plaintiff, as that of a mortgagee in possession, that did not occur until April, 1887, less than twenty years before the bringing of the action. The action was timely brought within the provision of section 379 of the Code of Civil Procedure. The plaintiff was, therefore, entitled to a decree for the redemption of the farm in controversy from the mortgage hitherto recited on such terms as the court might under the circumstances determine to be just, and for this reason the judgment must be reversed and a new trial awarded, with costs to abide the final award of costs.

EDWARD T. BARTLETT, HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur; HISCOCK, J., dissents on ground that action was barred by laches.

Judgment reversed, etc.